UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

In re:

Darvin Alexander and                    Case #: 11-74515
Bonita Renee Alexander,                  APN: 13-07146

                Debtors.                 Chapter 7

---

Southern Bank & Trust Company,
James M. Pickrell, Jr., Trustee,
Janice P. Anderson, Trustee,

                Appellants,

v.                                       CIVIL NO. 2:14cv465

Darvin Alexander,
Bonita Renee Alexander,
Leontine Brown,
Rogers Lee Brown,
United States of America, and
Clara P. Swanson, Chapter 7 Trustee,

                Appellees.


## OPINION

This matter is before the court on appeal, pursuant to 28 U.S.C. § 158(a), from the United States Bankruptcy Court for the Eastern District of Virginia (the "Bankruptcy Court"). The Appellants, Southern Bank and Trust Company, Trustee James M. Pickrell, Jr., and Trustee Janice P. Anderson (collectively, the "Bank"), appeal the Bankruptcy Court's dismissal of their Complaint by Memorandum Opinion of July 16, 2014. This matter is

also before the court on the "Objection to Exhibits to Brief and Motion to Strike Same, with Points and Authorities" ("Motion to Strike Exhibits"), filed on October 9, 2014, by the Appellee, Clara P. Swanson, Chapter 7 Trustee (the "Trustee"). ECF No. 7. For the reasons stated herein, the Trustee's Motion to Strike Exhibits is **DENIED**, and the Bankruptcy Court's decision is **AFFIRMED** in all respects.

Upon examination of the briefs and the record on appeal, the court concludes that oral argument is unnecessary to decide the issues presented on this appeal, as "the facts and legal arguments are adequately presented in the briefs and record and the decisional process would not be significantly aided by oral argument." Fed. R. Bankr. P. 8012; see, e.g., In re Smoot, No. 305cv482, 2006 WL 848120, at *1 (E.D. Va. Mar. 30, 2006).

## I. BACKGROUND

On July 28, 2014, the Bank filed the timely Notice of Appeal, appealing the Bankruptcy Court's dismissal of the Complaint against the Defendants Darvin Alexander ("Mr. Alexander"), Bonita Renee Alexander ("Mrs. Alexander," and collectively with Mr. Alexander, the "Debtors" or the "Alexanders"), Leontine Brown ("Mrs. Brown"), Rogers Lee Brown ("Mr. Brown," and collectively with Mrs. Brown, the "Browns"), the Internal Revenue Service ("IRS"), and the Trustee. See Notice of Appeal, ECF No. 2.

## A. Factual History[1]

By valid and recorded deed of January 29, 1999 ("1999 Deed"), Mrs. Alexander and her mother Mrs. Brown acquired all interests in the real property and improvements known as 700 Pleasant Ridge Court, Chesapeake, Virginia, 23320 (the "Property"). Appellant Br. at 6, ECF No. 4. On that same date, Mrs. Alexander and Mrs. Brown entered into a loan ("1999 Loan") with BNC Mortgage, Inc. ("BNC"). Id. On February 8, 1999, Mrs. Alexander and Mrs. Brown entered into a properly recorded deed of trust to secure the note payable to BNC ("1999 Deed of Trust"), in the principal amount of $200,000.00. Id. at 6-7.

On April 19, 2006, Mrs. Alexander and Mrs. Brown executed a deed ("2006 Deed"), which conveyed all of their interests in the Property to Mrs. Brown and Mr. Brown. Id. at 7. However, the 2006 Deed was never recorded in the Clerk's Office. Id.[2]

On May 5, 2006, the Browns entered into a loan ("2006 Loan"), which consists of a $475,000.00 Note ("2006 Note") payable to the Bank of the Commonwealth and a properly recorded deed of trust ("2006 Deed of Trust") to secure the payment of the 2006 Note. Id. $194,174.27 of the proceeds from the 2006

---

[1] On appeal, the district court reviews findings of fact made by the Bankruptcy Court for clear error. See infra Part II.B.1.

[2] In addition, the unrecorded deed spelled Mrs. Brown's first name incorrectly as "Leotine" rather than "Leontine." See Compl. ¶ 12, ECF No. 2.

Loan fully paid off and satisfied the 1999 Loan that was previously owed by Mrs. Alexander and Mrs. Brown. Id.

On September 19, 2006, the Browns entered into a line of credit ("Line of Credit") in the amount of $80,000.00, payable to the Bank of the Commonwealth. Id. On that same date, the Browns signed a deed of trust ("Line of Credit Deed of Trust") to secure the payment of the Line of Credit, which was recorded in the Clerk's Office on September 26, 2006. Id. at 7-8. Subsequently, there were changes in terms agreements dated December 30, 2008, and September 23, 2010, as well as a modification on September 23, 2010. Id. at 8.

On September 27, 2010, the Browns entered into a deed of trust ("2010 Deed of Trust") with the Bank of the Commonwealth, conveying the Property in trust to secure the payment of the 2006 Note, the Line of Credit, and any other obligations the Browns owed to the Bank of the Commonwealth. Id.

Southern Bank and Trust Company acquired the assets of the Bank of the Commonwealth from the Federal Deposit Insurance Corporation as Receiver for the Bank of the Commonwealth, and the obligations under the 2006 Loan and the Line of Credit, and the rights and benefits under the three deeds of trust were assigned to the Bank. Id.

On February 9, 2012, the Browns filed for Chapter 11 bankruptcy protection ("Brown Bankruptcy"), which case was

4

converted to a Chapter 7 bankruptcy proceeding on January 10, 2013, and the Honorable Stephen C. St. John presided over the Brown Bankruptcy. Id. The Browns included the Property in their schedules, as well as their obligations under the 2006 Loan and Line of Credit. Id. at 8-9. On January 8, 2013, the Bankruptcy Court entered a Relief Order, which granted the Bank the ability to enforce its rights under the Loan documents. Id. at 10. The Browns received their Chapter 7 discharge on May 21, 2013, and the Brown Bankruptcy case was closed on May 29, 2013. Id. at 9.

On October 10, 2011, the Debtors, the Alexanders, filed their Chapter 13 bankruptcy petition, which case was converted to Chapter 7 on November 6, 2013, and Chief Judge St. John presided over the case. Id. at 5, 10. The Debtors did not initially schedule any interest in the Property, but upon their conversion to Chapter 7, they filed an amended schedule, in which they asserted that Mrs. Alexander has a tenancy-in-common interest in the Property with her mother Mrs. Brown. Id. at 10. However, the Debtors did not schedule themselves as being liable under either the 2006 Loan or the Line of Credit. Id. at 11.

## B. Procedural History

### 1. Bankruptcy Court Appeal

The Bank filed the Complaint on November 25, 2013, in which it asserted nine causes of action: (I) declaratory judgment as

5

to the validity of the Bank's lien; (II) reformation of the deeds of trust; (III) equitable subrogation; (IV) constructive trust; (V) equitable lien; (VI) implied or resulting trust; (VII) unjust enrichment; (VIII) specific performance; and (IX) equitable relief pursuant to 11 U.S.C. § 105. The Trustee filed a Motion to Dismiss the Complaint on January 13, 2014, in which she argued that her strong-arm powers under 11 U.S.C. § 544 and status as a bona fide purchaser ("BFP") defeated the various forms of equitable relief sought by the Bank. See Mem. Supp. Mot. Dismiss at 4, ECF No. 2.

After full briefing by the parties and a hearing on March 12, 2014, the Bankruptcy Court granted the Trustee's Motion to Dismiss all counts of the Complaint by Memorandum Opinion of July 16, 2014 ("Bankruptcy Memorandum Opinion"). See Bankr. Mem. Op. at 28, ECF No. 2. The Bankruptcy Court dismissed the declaratory judgment sought in Count I, on the grounds that a ruling in the Bank's favor on the other equitable claims would resolve all its claims. Id. at 9-10. The Bankruptcy Court dismissed the claims in Counts II through VIII in recognition of the Trustee's strong-arm powers pursuant to 11 U.S.C. § 544(a). Id. at 11. Further, the Bankruptcy Court dismissed Count IX, because the substantive relief sought under Title 11 U.S.C. § 105 would go beyond the provisions of the Bankruptcy Code and beyond the authority of the Bankruptcy Court. See id. at 25-28.

On September 25, 2014, the Bank filed its Brief ("Appellant Brief"), appealing the Bankruptcy Court's dismissal of its Complaint, and attached four exhibits. See ECF No. 4. Exhibit A is a copy of the schedules from the Brown Bankruptcy. ECF No. 4-1. Exhibit B is a copy of the Motion for Relief from Automatic Stay ("Relief Motion"), which the Bank filed on December 5, 2012, in the Brown Bankruptcy case, and in which the Bank alleged that the 2006 Deed of Trust, Line of Credit Deed of Trust, and 2010 Deed of Trust encumber the Property. ECF No. 4-2. Exhibit C is a copy of the Browns' Response to the Relief Motion, which the Browns filed on December 14, 2012, in the Brown Bankruptcy case, and in which they state that they owned the Property and that the Bank has a lien on an entire 100% interest in the Property. ECF No. 4-3. Exhibit D is a copy of the Relief Order entered by the Bankruptcy Court in the Brown Bankruptcy on January 8, 2013, in which the Bankruptcy Court granted the Bank's Relief Motion. ECF No. 4-4.

On October 9, 2014, the Trustee filed her Brief ("Appellee Brief"), in which she asserts that the Bankruptcy Court correctly dismissed the Complaint and correctly held that the Trustee's power as a bona fide purchaser pursuant to 11 U.S.C. § 544(a) defeats the Bank's prayer for various forms of equitable relief. Appellee Br. at 2, ECF No. 6. The Bank filed its Reply Brief ("Appellant Reply Brief") on October 23, 2014. ECF No. 9.

## 2. Motion to Strike Exhibits

The Trustee filed the Motion to Strike Exhibits on October 9, 2014, in which the Trustee argues that the Bank's four exhibits attached to the Appellant Brief were expressly excluded from the record on appeal by the Bankruptcy Court and that this court "must decide the propriety of the Bankruptcy Court's ruling based on the record before that court." Mot. Strike Exs. at 3. The Trustee notes that the Bankruptcy Court excluded the exhibits from the Designation of the Record on Appeal. See id. at 2. Specifically, the Trustee states that "[t]he four exhibits filed by the Appellants with their brief are the exact exhibits that Judge St. John expressly excluded from the record on appeal." Id. at 3 (emphasis added).

On October 20, 2014, the Bank filed its Response in Opposition to Appellee's Objection and Motion to Strike ("Response in Opposition to Motion to Strike Exhibits"), in which the Bank asserts that the four exhibits "are not additional evidence." Resp. Opp'n Mot. Strike Exs. at 2, ECF No. 8.[3] The Bank argues that "[t]he Bankruptcy Court should have taken, and the District Court is compelled to take, judicial notice of the Brown Bankruptcy Schedules, Relief Motion,

---

[3] Moreover, the Bank asserts that the Chapter 7 Trustee "is desperate to keep the Bankruptcy Court Pleadings from this Court because such documents are fatal to the Chapter 7 Trustee's case on appeal." Resp. Opp'n Mot. Strike Exs. at 2.

Response, and Relief Order pursuant to Rule 201 of the Federal Rules of Evidence." Id. at 7 (emphasis added).

The Trustee filed her Reply Memorandum ("Reply in Support of Motion to Strike Exhibits") on October 24, 2014. ECF No. 10. In her Reply, the Trustee argues that the court should not take judicial notice of the Bank's exhibits because they are irrelevant. See Reply Supp. Mot. Strike Exs. at 3-4.

## II. ANALYSIS

### A. Motion to Strike Exhibits

Federal Rule of Bankruptcy Procedure 8006 provides for the record on an appeal from a bankruptcy court. Fed. R. Bankr. P. 8006. In relevant part, Rule 8006 provides that "[t]he record on appeal shall include the items so designated by the parties, the notice of appeal, the judgment, order, or decree appealed from, and any opinion, findings of fact, and conclusions of law of the court." Id. The Court of Appeals for the Fifth Circuit has added that:

> [Bankruptcy] Rule 8006 provides that the record on appeal from a bankruptcy court decision consists of designated materials that became part of the bankruptcy court's record in the first instance. The rule does not permit items to be added to the record on appeal to the district court if they were not part of the record before the bankruptcy court.

In re CPDC, Inc., 337 F.3d 436, 443 (5th Cir. 2003) (emphasis added). Thus, the Motion to Exclude Exhibits requires the court to make two determinations: (1) whether the exhibits were part

9

of the record before the bankruptcy court;[4] and (2) whether the information meets the narrow purpose of judicial notice. See In re SI Restructuring, Inc., 480 F. App'x 327, 329 (5th Cir. 2012). Federal Rule of Evidence 201 provides for the judicial notice of adjudicative facts. In relevant part, the Rule provides:

> (a) Scope. This rule governs judicial notice of an adjudicative fact only, not a legislative fact.
> (b) Kinds of Facts That May Be Judicially Noticed. The court may judicially notice a fact that is not subject to reasonable dispute because it:
>> (1) is generally known within the trial court's territorial jurisdiction; or
>> (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.
> (c) Taking Notice. The court:
>> (1) may take judicial notice on its own; or
>> (2) must take judicial notice if a party requests it and the court is supplied with the necessary information.
> (d) Timing. The court may take judicial notice at any stage of the proceeding.
> (e) Opportunity to Be Heard. On timely request, a party is entitled to be heard on the propriety of taking judicial notice and the nature of the fact to be noticed. If the court takes judicial notice before notifying a party, the party, on request, is still entitled to be heard.

Fed. R. Evid. 201 (emphasis added).

Generally, even though a court may take judicial notice of a document filed in another court to establish the fact of such litigation, courts cannot take judicial notice of the factual

---

[4] The exhibits attached to the Appellant Brief were not part of the record before the Bankruptcy Court, and thus, the Bankruptcy Court disallowed the documents from being included in the record on the designation of appeal. See Bankruptcy Court Docket, ECF No. 2; Mot. Strike Exs. at 2; Resp. Opp'n Mot. Strike Exs. at 2.

findings of another court. <u>Taylor v. Charter Med. Corp.</u>, 162 F.3d 827, 830 (5th Cir. 1998) (noting agreement by the Courts of Appeal for the Second, Eighth, and Eleventh Circuits). "If it were permissible for a court to take judicial notice of a fact merely because it has been found to be true in some other action, the doctrine of collateral estoppel would be superfluous." <u>United States v. Jones</u>, 29 F.3d 1549, 1553 (11th Cir. 1994).[5] Although these cases deal with evidence submitted with a motion for summary judgment, unlike the Motion to Dismiss in this case, the law of judicial notice applies to both situations in a similar manner. Moreover, the court has the discretion to supplement the record on appeal. See <u>In re David</u>, 937 F.2d 602, Nos. 90-3133, 90-3170, at *1 (4th Cir. July 15, 1991).

In essence, the Bank is asking the court to take judicial notice of the factual findings of another court.[6] The Bankruptcy Court did not have occasion to consider the rights and interests of the Trustee when issuing the Relief Order in the Bank's Exhibit D, as the Trustee was not a party before the Bankruptcy

---

[5] The Bank admits that "[t]his is not an issue of <u>res judicata</u> or collateral estoppel." Appellant Br. at 13.

[6] It is of no importance to the court that Chief Judge St. John presided over both the Brown Bankruptcy and the Alexander Bankruptcy. Moreover, the Bankruptcy Court specifically disallowed the four exhibits from the designation of the record on appeal, as they were not considered by the Bankruptcy Court in rendering its decision.

Court in the Brown Bankruptcy. This arguable question as to the factual finding made in the Relief Order is certainly enough to cast doubt on the accuracy of the factual findings therein. The court agrees with the Trustee's assessment that the Bank "cannot prove anything through pleadings and orders in another bankruptcy case, to which this Trustee was not a party." Reply Supp. Mot. Strike Exs. at 4.[7] In addition, the Brown Bankruptcy determination regarding the Bank's interest in the Property is not an "adjudicative fact" within the meaning of Rule 201. Whether a party has any interest in a parcel of property is a

---

[7] In support of its Response in Opposition to the Motion to Strike Exhibits, the Bank cites several cases for the proposition that the court should take judicial notice of the Relief Order and other Brown Bankruptcy filings. In In re Federal Support Co., for example, the court took judicial notice of "evidence presented at earlier hearings in the [same] case," over the appellants' argument that the court "should not have considered and used its knowledge of the facts presented at earlier hearings in the case." No. 87-325-N, 1987 U.S. Dist. LEXIS 7646, at *6 (E.D. Va. Aug. 10, 1987). Moreover, in that case, the appellants had already waived any right to raise the issue on appeal. Id. at *5-6. The Bank further cites to In re Food Fair, a case in which the bankruptcy court ruled that a document, though it was not before the court at the time of the Orders being appealed, should be available to the appellate court when it considers the appeal. 15 B.R. 569, 572 (Bankr. S.D.N.Y. 1981). In that case, the document related to several adversary proceedings before the bankruptcy court which were "very closely related to the Orders which have been appealed." Id. Indeed, the procedural posture of In re Food Fair distinguishes it from the instant litigation. In the Bank's case, the Bankruptcy Judge has already considered whether to designate the exhibits as part of the appeal to this court, and the Bankruptcy Judge rejected the Bank's position.

mixed question of fact and law and is thus subject to the court's de novo review. See Taylor, 162 F.3d at 830-31.

The court has read and considered the exhibits. In the interests of justice and a full and fair appeal, the court will exercise its discretion and consider the exhibits attached by the Bank.[8] The court will take judicial notice of the fact of the exhibits, such as the dates and parties in the filings. However, the court declines to take judicial notice of the "factual" contents of the Bank's exhibits, including the legal conclusions of the Bankruptcy Court in the Brown Bankruptcy case. The court will not accept as "adjudicative fact" the findings in another case, especially one in which the Alexanders were not a party. Since the facts in the filings in the Brown Bankruptcy case are not binding on this court in this case, the court declines to take judicial notice of any "fact" in the Bank's exhibits. Specifically, the court will not take judicial notice of the Brown Bankruptcy Court's factual finding that the Bank has an interest in the Property: that determination is not an

---

[8] The Bank argues that "the Bankruptcy Court prematurely prevented the Lender from 'trying its case' by granting a motion to dismiss before the Lender could get to the merits of its case." Resp. Opp'n Mot. Strike Exs. at 11. However, there were no issues of material fact in dispute at the time that the Bankruptcy Court granted the Motion to Dismiss, and it remains true during this appeal, that there are no issues of material fact that are in dispute. The Motion to Dismiss, as well as this appeal, can be decided on the basis of the factual statement within the Bank's Complaint.

adjudicative fact within the meaning of Rule 201 and its reliability <u>can</u> be reasonably questioned. <u>See</u> <u>Taylor</u>, 162 F.3d at 831. Accordingly, the court takes judicial notice of the Relief Order and attendant filings for the limited purpose of establishing the judicial acts themselves.

Accordingly, the Trustee's Motion to Strike Exhibits is **DENIED**, with the limitations as to judicial notice as described above.

## B. Bankruptcy Appeal

### 1. Standards of Review

On appeal, the district court reviews findings of fact made by the Bankruptcy Court for clear error. <u>See</u> Fed. R. Bankr. P. 8013; <u>see, e.g.</u>, <u>In re Taneja</u>, 743 F.3d 423, 429 (4th Cir. 2014). Conclusions of law are reviewed <u>de novo</u>. <u>In re Taneja</u>, 743 F.3d at 429.

On a motion to dismiss, the court considers Federal Rule of Civil Procedure 8(a)(2), which provides, in pertinent part, "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P 8(a)(2).[9] The complaint need not have detailed factual allegations, but Rule 8 "requires more than labels and conclusions, and a formulaic recitation of

---

[9] Federal Rule of Bankruptcy Procedure 7012 incorporates Federal Rule of Civil Procedure 12.

the elements of a cause of action will not do." <u>Bell Atl. Corp.</u>
<u>v. Twombly</u>, 550 U.S. 544, 555 (2007). "To survive a motion to
dismiss, a complaint must contain sufficient factual matter,
accepted as true, to 'state a claim to relief that is plausible
on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)
(quoting <u>Twombly</u>, 550 U.S. at 570). Facial plausibility means
that a "plaintiff pleads factual content that allows the court
to draw the reasonable inference that the defendant is liable
for the misconduct alleged." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at
556). It is, therefore, not enough for a plaintiff to allege
facts demonstrating a "sheer possibility" or "mere[]
consist[ency]" with unlawful conduct. <u>Id.</u> (citing <u>Twombly</u>, 550
U.S. at 556-57).

The Supreme Court, in <u>Twombly</u> and <u>Iqbal</u>, offered guidance
to courts evaluating a motion to dismiss:

> In keeping with these principles a court considering a
> motion to dismiss can choose to begin by identifying
> pleadings that, because they are no more than
> conclusions, are not entitled to the assumption of
> truth. While legal conclusions can provide the
> framework of a complaint, they must be supported by
> factual allegations. When there are well-pleaded
> factual allegations, a court should assume their
> veracity and then determine whether they plausibly
> give rise to an entitlement to relief.

<u>Iqbal</u>, 556 U.S. at 679. That is, the court accepts facts alleged
in the complaint as true and views those facts "in the light
most favorable to the plaintiff." <u>Venkatraman v. REI Sys., Inc.,</u>

15

417 F.3d 418, 420 (4th Cir. 2005). Overall, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

### 2. Declaratory Judgment as to the Validity of the Bank's Lien

In Count I of the Complaint, the Bank essentially seeks judicial reformation of the 2006 Deed, asking the court to declare that the Browns are fee simple owners of the Property, that Mrs. Alexander has no interest in the Property, that repayment of the 2006 Loan and Line of Credit is secured by the Browns' interest in the Property, and that the Bank has a valid, enforceable, and binding lien against the entire Property. Compl. ¶ 41. The Bankruptcy Court dismissed Count I. Bankr. Mem. Op. at 10.[10]

The Bankruptcy Court dismissed Count I on the grounds that because the declaratory judgment sought by the Bank is duplicative of its other claims, there is no basis for the assertion of declaratory jurisdiction. Id. at 9-10. This court agrees. See, e.g., Metra Indus., Inc. v. Rivanna Water & Sewer

_____

[10] In neither the Bank's Appellant Brief nor its Reply Brief, does the Bank specifically allege error as to the Bankruptcy Court's dismissal of its claim for a declaratory judgment. Nevertheless, the court will considered whether the Bankruptcy Court properly dismissed Count I.

16

Auth., No. 3:12cv49, 2014 WL 652253, at *2 (W.D. Va. Feb. 19, 2014) ("Because the declaratory judgment claim seeks the resolution of legal issues that will, of necessity, be resolved in the course of the litigation of the other causes of action, the court agrees . . . that the claim for declaratory relief is duplicative, and that permitting the claim to proceed will not serve a useful purpose in settling the legal relations in issue.") (internal citation and quotations omitted). Moreover, the United States Supreme Court has noted that the Declaratory Judgment Act "confers a discretion on the courts rather than an absolute right upon the litigant." Wilton v. Seven Falls Co., 515 U.S. 277, 287 (1995). Therefore, the Bankruptcy Court's dismissal of Count I of the Complaint is affirmed for the reasons stated in the Bankruptcy Court's Memorandum Opinion.[11] See Bankr. Mem. Op. at 7-10.

### 3. The Bank's Equitable Claims to Relief and the Trustee's Strong-Arm Powers

In Counts II through VIII of the Complaint, the Bank seeks various equitable forms of relief, and Count IX asks the court to exercise its power under 11 U.S.C. § 105 to order that the Bank has a valid first-priority lien on the Property.[12] In this appeal, the Bank alleges six assignments of error related to the

---

[11] See infra Part II.B.3, in which the court addresses the substance of the Bank's arguments regarding the Property.

[12] See supra I.B.i.

17

Bankruptcy Court's dismissal of its claims for equitable relief. First, the Bank argues that the Bankruptcy Court erred in holding that the Bank does not hold a lien of record against the entire Property interest. Appellant Br. at 12. Second, the Bank claims the Bankruptcy Court erred in concluding that delivery of the 2006 Deed was not effective. Id. at 14. Third, the Bank argues error in holding that the Trustee did not need to file an adversary proceeding in order to assert her strong-arm powers. Id. at 18. Fourth, the Bank claims that the Bankruptcy Court erred in disregarding the doctrine of laches. Id. at 21. Fifth, the Bank argues that the Bankruptcy Court erred in relying on the case In re Perrow, 498 B.R. 560 (Bankr. W.D. Va. 2013). Appellant Br. at 23-24. Lastly, the Bank argues that the Bankruptcy Court erred in granting the Motion to Dismiss because the Chapter 7 Trustee failed to meet her burden of proof. Id. at 24.

The Bankruptcy Court held that the Trustee's strong-arm powers pursuant to 11 U.S.C. § 544(a) defeat all of the Bank's equitable claims to relief. Bankr. Mem. Op. at 11-26. The court has reviewed the factual findings of the Bankruptcy Court for clear error, and the legal conclusions of the Bankruptcy Court de novo.[13] The court finds that the Bankruptcy Court committed no error and properly granted the Motion to Dismiss. Accordingly,

---

[13] See supra Part II.B.1.

the Bankruptcy Court's Memorandum Opinion is affirmed in all respects, for the reasons stated below as well as in the Bankruptcy Court's Memorandum Opinion.[14]

### a. The Bank Does Not Hold a Lien Against the Entire Property

The Bank assigns error to the Bankruptcy Court's conclusion that the Bank does not hold a lien against Mrs. Alexander's interest in the Property. Appellant Br. at 12. The Bank argues that the Relief Order in the Brown Bankruptcy contradicts the Bankruptcy Court's decision in this case. Id. Though the Bank claims that this is not an issue of res judicata or collateral estoppel, id. at 13, and did not plead res judicata or collateral estoppel in its Complaint, the Bank fails to explain other grounds for this position. The court will not use the Bank's Exhibit D to collaterally estop the Trustee in this case. Moreover, the court will not allow the Bankruptcy Court's findings in the Brown Bankruptcy case to bind the Trustee.[15] Accordingly, the Bankruptcy Court committed no error as to this finding.

---

[14] Although the Bank does not specifically assign error to the Bankruptcy Court's dismissal of Count IX of the Complaint, the court notes that the Bankruptcy Court committed no error in dismissing Count IX of the Complaint on the grounds that Title 11 U.S.C. § 105 should not be applied to negate the legal effect of § 544. See Bankr. Mem. Op. at 26-28.

[15] See supra Part II.A, in which the court denied the Trustee's Motion to Exclude Exhibits.

## b. Delivery of the 2006 Deed

The Bankruptcy Court noted that "effective delivery of the
2006 Deed makes no difference to the outcome here, because the
Trustee acquired her rights in the Property as a bona fide
purchase pursuant to § 544(a)(3)." Bankr. Mem. Op. at 26. The
Bank argues that "[b]ecause the 2006 Deed was admittedly
delivered, title passed." Appellant Br. at 15.

The United States Supreme Court has held that "[p]roperty
interests are created and defined by state law," including in
bankruptcy proceedings. Butner v. United States, 440 U.S. 48, 55
(1979). Accordingly, Virginia law controls the question whether
delivery of the 2006 Deed was effective to transfer ownership of
the Property, and whether effective delivery trumps the failure
to record the 2006 Deed. In re Houston, 409 B.R. 799, 811
(Bankr. D.S.C. 2009) ("A trustee in bankruptcy may only defeat
an adverse party's equitable interest in property if, under
state law, a bona fide purchaser of debtor's interest in subject
property would prevail over the adverse party at the date of
filing.") (emphasis added).

The key issue is whether, under the law of the Commonwealth
of Virginia, effective delivery without recordation erases any
interest of the grantor in the property. In Virginia, "[t]he
question of the delivery of a deed is one of intention, and the
delivery is complete when there is an intention manifested on

the part of the grantor to make the instrument his deed." Crump v. Gilliam, 190 Va. 935, 945, 59 S.E.2d 72, 76 (1950). However, whether delivery of an unrecorded deed occurred reaches only the question of transfer of title between grantors and grantees; Virginia law requires both delivery and recordation to affect the rights of third parties, such as bona fide purchasers. See Commonwealth v. Selden, 19 Va. 160, 164 (1816); see also In re Perrow, 498 B.R. at 571 (citing Nat'l Mut. Bldg. & Loan Ass'n v. Blair, 98 Va. 490, 36 S.E. 513, 515 (1900)) ("Only a purchaser without knowledge of another's failure to record an instrument may take advantage of the other's failure."). Under Virginia law, a conveyance of real estate is void as to a subsequent bona fide purchaser of real estate until it is recorded. See Snyder v. Grandstaff, 96 Va. 473, 31 S.E. 647, 648 (1898); Carter v. Allan, 62 Va. 241, 249 (1871). Further, under § 544, the trustee may avoid unrecorded or undisclosed interests whenever, under state law, a bona fide purchaser would prevail over an interest holder. See 11 U.S.C. § 544(a)(3).

Had the Bank of the Commonwealth, the Bank's predecessor-in-interest, conducted a basic title search prior to entering into the 2006 Loan, in the amount of $475,000.00, and the Line of Credit, in the amount of $80,000.00, for a total amount of $555,000.00 to the Browns, the Bank could have avoided this entire litigation. Virginia law does not excuse such negligence,

and this court will not allow the Bank to avoid the collateral consequences of its predecessor-in-interest's failure to conduct such a basic title search. At the time of the commencement of the Alexanders' Chapter 7 proceeding, the 2006 Deed had not been duly recorded.

Applying § 544(a) to the facts of this case, the Trustee, as a bona fide purchaser, took title to all the property in which Mrs. Alexander held an interest as of the date of the bankruptcy petition, free and clear of all unrecorded conveyances and all equitable liens of which the Trustee had no constructive or actual notice. Accordingly, the Trustee as bona fide purchaser took title to an unencumbered one-half interest in the Property, since the 2006 Deed was never recorded. Accordingly, the Bankruptcy Court committed no error in finding that "effective delivery of the 2006 Deed makes no difference to the outcome here, because the Trustee acquired her rights in the Property as a bona fide purchaser pursuant to § 544(a)(3)." See Bankr. Mem. Op. at 26.

### c. The Defensive Use of Strong-Arm Powers

The Bank asserts that the Bankruptcy Court committed error when it concluded that the Trustee "need not file an adversary proceeding to assert her 'strong arm-powers.'" Appellant Br. at 18. The Bankruptcy Court found that "[t]he Trustee is entitled to raise her 'strong-arm powers' under § 544(a) as a

22

defense to a superior claim to an asset of the estate, without regard to whether she has raised such powers in a lien avoidance adversary proceeding." Bankr. Mem. Op. at 19.

Title 11 U.S.C. § 544 provides, in pertinent part:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by . . .

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a)(3). Other courts have held that Chapter 7 trustees are entitled to exercise such powers in a defensive manner. See, e.g., In re Ducane Gas Grills, Inc., 320 B.R. 324, 335-36 (Bankr. D.S.C. 2004) ("Although no adversary proceeding has been filed with respect to Debtor's § 544 avoidance powers, it has been recognized that 11 U.S.C. § 544 can be asserted defensively, without the need to file an adversary proceeding."); In re Loewen Grp. Int'l, Inc., 292 B.R. 522, 528 (Bankr. D. Del. 2003) (holding that the trustee could use § 544(a)(3) defensively). Moreover, courts allow trustees to exercise defensive powers under § 544 even if the filing of an adversary proceeding would be time-barred by the statute of

limitations. See, e.g., Bank of New York v. Sheeley, No. 3:13cv136, 2014 WL 1233094, at *8 (S.D. Ohio Mar. 25, 2014) (affirming the bankruptcy court's conclusion that the limitations period in § 546(a) does not bar the trustee from defensively asserting rights as a bona fide purchaser under § 544(a)); In re Block, 259 B.R. 498, 500 (Bankr. D.R.I. 2001) ("I also rule that 11 U.S.C. § 544(a)(3) is not limited to affirmative use by the Trustee, and that its use as a defensive tool is not restricted by any limitations period.").

There is nothing in the text of the statute that would prevent the Trustee from exercising her strong-arm powers defensively. Indeed, § 544(a) expressly grants the trustee the status of a bona fide purchaser of all of a debtor's interests in said property as of the date of the filing of the petition. The authorities that the Bank cites are not to the contrary. For example, the Bank cites Cen-Pen Corp. v. Hanson, 58 F.3d 89, 93 (4th Cir. 1995), for the proposition that "Bankruptcy Rule 7001(2) expressly requires initiation of an adversary proceeding 'to determine the validity, priority, or extent of a lien or other interest in property,' with one exception not applicable here." Appellant Br. at 19 (citing Cen-Pen Corp., 58 F.3d at 93). Actually, Cen-Pen Corp. is distinguishable from the instant case: Cen-Pen Corp. does not mention 11 U.S.C. § 544, the statute at issue here, strong-arm powers, or bona fide purchasers.

The court agrees with the Bankruptcy Court, and finds that a trustee may exercise her § 544(a) strong-arm powers defensively. Accordingly, the court finds no error and affirms the judgment of the Bankruptcy Court in this regard, for the reasons stated herein and the reasoning of the Bankruptcy Court in the Memorandum Opinion. See Bankr. Mem. Op. at 19-22.

### d. Doctrine of Laches

The Bank did not plead the doctrine of laches in its Complaint, nor did the Bankruptcy Court mention the doctrine of laches in its Memorandum Opinion. Accordingly, this is not a proper assignment of error, as there can be no error committed by the Bankruptcy Court on something it had no occasion to consider in the first instance.

### e. In re Perrow

In the Bankruptcy Court's Memorandum Opinion, the court cites to In re Perrow, 498 B.R. 560, in support of the powers of a Chapter 7 trustee pursuant to 11 U.S.C. § 544(a)(3). See Bankr. Mem. Op. at 12-15. In particular, the Bankruptcy Court relied on In re Perrow for "the effect of a bankruptcy trustee's status as a bona fide purchaser under Virginia law vis-à-vis an unrecorded deed of trust." Id. at 15.

The Bank asserts that the facts and procedural posture of In re Perrow make that case inapplicable to the instant litigation. Appellant Br. at 23-24. First, the Bank asserts that

25

"the plaintiffs in Perrow asserted their § 544(a) lien avoidance
strong-arm powers by filing a lien avoidance adversary
proceeding pursuant to Rule 7001(2)," whereas in this case, the
Trustee did not file an adversary proceeding. Id. at 24. This is
a distinction without a difference. The court has already held
that the Trustee may exercise her § 544 strong-arm powers
defensively.[16] Second, the Bank asserts that the document at
issue in Perrow was an unrecorded deed of trust, whereas in this
case, the document at issue is an unrecorded deed that has been
delivered. Id. Again, this distinction does not alter the
court's reliance on Perrow. The court has already found that
delivery of the deed does not alleviate the Bank's failure to
conduct a basic title search.[17] Third, the Bank argues that the
Perrow debtors "never admitted or acknowledged that the deed of
trust was recorded," whereas the Alexanders "initially scheduled
and treated the 2006 Loan and Line of Credit as being secured by
[Mr. Brown's] and [Mrs. Brown's] interest in the Property as
reflected by their Schedules which were filed under oath stating
that they had no interest in the Property." Id. This distinction
does not persuade the court that Perrow is not instructive in
determining the outcome of this case.

---

[16] See supra Part II.B.3.c.

[17] See supra Part II.B.3.b.

Although the Bank asserts that the court should not rely on Perrow because of factual and procedural distinctions, the Bank has failed to cite a single case that is directly applicable to the instant litigation, likely due to the unique facts and circumstances of this case. The court, therefore, must consider analogous cases and situations in order to guide the decision-making process. Accordingly, the court finds no error in the Bankruptcy Court's reliance on In re Perrow.

### f. Burden of Proof

The Bank argues that the Trustee has not satisfied her burden of proof on the Motion to Dismiss. Appellant Br. at 24. The Bank correctly asserts that in ruling on a motion to dismiss, a court "must accept all factual allegations in the complaint as true [and] construe the complaint in a light most favorable to the plaintiffs." Id.[18] The Bankruptcy Court accepted as true all factual allegations made by the Bank. See Bankr. Mem. Op. at 6. Moreover, this court has accepted all factual allegations made by the Bank. However, the court will not accept the legal conclusions of the Bank, such as the effect of delivery on the legal status of the parties. Accordingly, the Bank's sixth assignment of error is without merit.

---

[18] See supra Part II.B.1, for the standard of review.

### III. CONCLUSION

Because the Trustee takes her interest in the Property as a bona fide purchaser pursuant to § 544(a)(3), and for the reasons stated above, the court **AFFIRMS** the Memorandum Opinion of July 16, 2014, in which opinion the Bankruptcy Court granted the Trustee's Motion to Dismiss all nine counts of the Complaint. Further, the court **DENIES** the Trustee's Motion to Exclude Exhibits. The Clerk is **DIRECTED** to forward a copy of this Opinion to the parties and to the Bankruptcy Court.

**IT IS SO ORDERED.**

/s/
Rebecca Beach Smith
Chief
United States District Judge

REBECCA BEACH SMITH
CHIEF UNITED STATES DISTRICT JUDGE

December 16, 2014